CC-2002-239                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Olga López Hernández  Recurrida  v.  Municipio de Mayagüez, et als  Peticionario | Certiorari  2003 TSPR 15  158 DPR ____ |

Número del Caso: CC-2002-0239


Fecha: 12 de febrero de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional IV


Juez Ponente:
                    Hon. Ivonne Feliciano Acevedo



Abogado de la Parte Peticionaria:

                    Lcdo. Guillermo Garau Díaz

Abogado de la Parte Recurrida:

                    Lcdo. Lorenzo Cabán Arocho


Materia: Procedimientos Especiales y Daños y Perjuicios



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Olga López Hernández

    Demandante-Recurrida

       v.

Municipio de Mayagüez,
et als                        CC-2002-239

    Demandado-Peticionario

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 12 de febrero de 2003.

**Nos corresponde resolver si, ante la ausencia transitoria del empleado de confianza que ocupa el puesto de Director de Recursos Humanos del Municipio, un Alcalde tiene facultad legal para nombrar de forma interina a una persona de su confianza a dicha plaza, o si por el contrario viene obligado a nombrar al funcionario que ocupa la posición de Sub-Director de ese mismo departamento.**

**Resolvemos que el Alcalde tiene discreción para llenar la plaza interinamente con una persona afín a su visión administrativa, toda vez que se trata de un puesto de confianza que provee para la libre**

**selección de su ocupante, y que exige sintonía ideológica entre el primer ejecutivo municipal y la persona que la ocupa. Veamos.**

I

El 21 de marzo de 1995, el Tribunal de Primera Instancia (en adelante, "TPI"), Sala Superior de Mayagüez, emitió Sentencia Parcial en la que declaró con lugar una solicitud de interdicto por violación de derechos civiles, presentada por la Sra. Olga López Hernández (en adelante, "Sra. López Hernández" o "demandante-recurrida") contra el Municipio de Mayagüez y su Alcalde, Hon. José G. Rodríguez (en adelante, "el Municipio", "el Alcalde" o "demandados-peticionarios"). En síntesis, el TPI determinó que la demandante-recurrida había sido removida de sus funciones como Sub-Directora de Recursos Humanos y trasladada al Departamento de Obras Públicas Municipal por razones de discrimen político.[1] En consecuencia, ordenó al Municipio a reinstalar a la Sra. López Hernández a su puesto de carrera de Sub-Directora de Recursos Humanos, a restituirle todos los deberes y responsabilidades inherentes a su puesto y a permitirle ejercer y llevar a cabo los mismos. Dicha Sentencia Parcial fue confirmada por el Tribunal de Circuito de Apelaciones (en adelante, "TCA). *Véase López Hernández v. Municipio de Mayagüez*, KLAN 9500647, la cual advino final y firme.

Aproximadamente cinco años después de la referida sentencia, el 10 de marzo de 2000, la demandante-recurrida presentó ante el TPI una *Moción de Desacato y Daños y*

---

[1] **Tal discrimen dimanaba del hecho que ella fue parte del equipo de trabajo del ex-alcalde, Hon. Benjamín Cole. A pesar de que ambas administraciones se identifican con el mismo partido político (Partido Popular Democrático), nuestros precedentes reconocen el discrimen político dentro de una misma agrupación partidista. *Véase Clemente v. Departamento de Vivienda*, 114 D.P.R. 763, 768-769 (1983).**

*Perjuicios.* En ella, alegó que los demandados-peticionarios habían incumplido con lo ordenado en la Sentencia Parcial de 21 de marzo de 1995, al supuestamente continuar el discrimen político en su contra. En esencia, la aquí recurrida alegó que en las ocasiones en que el Director de Recursos Humanos se ausentaba de su puesto, las funciones correspondientes a dicho funcionario las realizaba la señora Lilliam Elías o la señora Yanirah Roberts.[2] Esto a pesar de que la demandante-recurrida era la Sub-Directora de Recursos Humanos.

El Municipio contestó la susodicha *Moción* explicando que no desacataba el dictamen de 21 de marzo de 1995 al no nombrar a la demandante-recurrida a la plaza de Director de Recursos Humanos. Esto debido a que la posición en cuestión es una de confianza, teniendo facultad el Alcalde para nombrar como interino a una persona afín a su visión administrativa.

Luego de varios incidentes procesales, el 9 de marzo de 2001 el TPI emitió Resolución en la que determinó que la postura del Municipio, en cuanto a que la posición de Director de Recursos Humanos es una de confianza, era errada en derecho, y que el principio del mérito había sido violentado. Igualmente, concluyó el foro de instancia que el discrimen político contra la Sra. López Hernández había continuado ininterrumpidamente, esto en contravención de lo ordenado por la Sentencia Parcial del 21 de marzo de 1995. De este modo, se encontró a los demandados-peticionarios incursos en desacato al tribunal, ante lo cual el TPI ordenó al Municipio a desistir inmediatamente de sus prácticas discriminatorias contra la demandante-recurrida, y la reintegraran en ***todos los deberes y responsabilidades***

---

[2] **Este hecho fue estipulado por las partes en vista celebrada ante el TPI el 13 de junio de 2000.**

*correspondientes al puesto de Sub-Directora de Recursos*

*Humanos.*[3]

---

[3] Según *Certificación* del Municipio de Mayagüez, suscrita por el Lcdo. José Aldebol Colón el 14 de diciembre de 1988 (fecha anterior a la aprobación de la Ley de Municipios Autónomos), los deberes del Sub-Director de Personal son los siguientes:

a)      En ausencia de cualquier naturaleza asumir las responsabilidades del Director.

b)      Firma de documentos relacionados con personal como notificaciones de ausencia, verificaciones de empleo, Informes, memos y otros.

c)      Supervisión directa de alrededor de catorce (14) empleados de menor jerarquía.

d)      Realizar trabajo responsable y especializado en relación con clasificaciones de puestos, retribución, exámenes y otras actividades relacionadas con personal.

e)      Ampliar conocimientos técnicos y profesionales para hacer decisiones [sic] en problemas del trabajo bajo supervisión del Director.

f)      Realizar trabajo responsable en la revisión y tramitación de todas las formas de transacción de personal de Personal [sic] sometido por las

continúa...

[3] ...continuación

dependencias municipales donde se requiere familiaridad con los procedimientos de Personal y aplicación de discreción.

g)      Redacción y análisis de costo de propuestas hasta su etapa final.

h)      Tramitación y proceso de todo lo relacionado con beneficios de Retiro incluyendo: Pensiones

i)      por mérito, Edad y Años, Incapacidad Ocupacional y No Ocupacional, Estados de Cuentas, Solicitudes de Reembolso, Beneficios de Muerte, etc.

j)      Tramitación de Informes de OSHA[,] incluyendo el análisis de la muestra.

k)      Orientación a funcionarios y empleados municipales sobre la política normativa y procedimientos relacionados con personal.

l)      Tramitación de liquidación por beneficios de muerte.

m)      Colaborar con el Director en la planificación, dirección y supervisión de todas las

El Municipio apeló este dictamen al TCA, foro que expidió el auto a los únicos efectos de establecer que el puesto de Director de Recursos Humanos del Municipio es uno de confianza.  Los aspectos restantes de la Resolución del TPI fueron confirmados.

Inconforme con dicha sentencia, el Municipio recurrió mediante *Certiorari* ante este Tribunal, señalando los siguientes errores:

> **Primer Error**: Incidió el Honorable Tribunal de Circuito de Apelaciones al resolver que el alcalde carece de facultad en ley para nombrar interinamente a una persona en un puesto en el servicio de confianza como Directora de Recursos Humanos, cuando el puesto estuvo vacante, porque venía obligado a nombrar a la demandante-recurrida, que era la Sub-Directora, aunque [é]sta ocupara un puesto de carrera.

> **Segundo Error**: Incidió el Honorable Tribunal de Circuito de Apelaciones al confirmar al Tribunal de Instancia a los efectos de declarar al peticionario incurso en desacato, y que hubo discrimen político con meras alegaciones que no hacen prueba, vulnerando el derecho del alcalde y su municipio a un debido proceso de ley.

> **Tercer Error**: Incidió el Honorable Tribunal de Circuito de Apelaciones al negarse a resolver que no procede conceder daños y perjuicios en el proceso de ejecución de sentencia.

Mediante Resolución de 26 de abril de 2002 expedimos el auto de *Certiorari*.  Las partes han presentado sus respectivos alegatos por lo que procedemos a resolver.

II

**Entendemos que atendiendo el primer señalamiento de error disponemos del caso, por lo que enfocamos la discusión a dicho asunto.**

**La controversia ante nuestra consideración requiere que nos pronunciemos sobre el alcance de las facultades del Alcalde para nombrar personal a puestos de confianza, y para sustituir interinamente a los directores de unidades**

_____

**actividades técnicas y administrativas que se desarrollan en la Oficina de Personal.**

administrativas, según la autoridad que le confiere la Ley de Municipios Autónomos, 21 L.P.R.A. §§ 4001 *et seq.* Además, que nos expresemos sobre los derechos de aquellos empleados públicos que ocupan un cargo de carrera bajo las disposiciones del referido estatuto. Específicamente, ¿tiene un empleado de carrera un derecho constitucional a ocupar el cargo de confianza de Director de Recursos Humanos cuando el ejecutivo municipal que lo ocupa se ausenta de su puesto temporeramente? Resolvemos en la negativa. Veamos.

A. La Ley de Municipios Autónomos y su sistema de personal

Allá para el año 1991, la Asamblea Legislativa de Puerto Rico aprobó una serie de leyes con el propósito de reformar de manera integral la organización y funcionamiento de la administración pública a nivel municipal. La ley principal de esta reforma fue la Ley de Municipios Autónomos, *supra*, la cual derogó la anterior Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. §§ 2001 *et seq.* *Véase Municipio de San Juan v. Banco Gubernamental de Fomento*, 140 D.P.R. 873, 885 (1996). Al rechazar expresamente el esquema de centralización administrativa imperante en ese entonces, la Ley declara como política pública el "otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financieras y los poderes y facultades necesarias para asumir un rol central y fundamental en su desarrollo social, económico y urbano." Art. 1.002, 21 L.P.R.A. § 4001(Propósito).

Al tenor de este espíritu, la referida ley instituyó un sistema autónomo de personal municipal.[4] De este modo, se excluyó a los municipios de la Ley de Personal, 3 L.P.R.A. §§ 1301 *et seq.*, siendo por consiguiente la Ley de

---

[4] Art. 11.001, 21 L.P.R.A. § 4551.

Municipios Autónomos la fuente de derecho principal para dilucidar controversias relativas al personal municipal.[5] No obstante la exclusión, consistentemente hemos aplicado a los empleados municipales la jurisprudencia dimanante de casos presentados bajo el palio de la Ley de Personal, *supra*.[6]

El sistema de personal municipal instituido por la Ley de Municipios Autónomos presenta una estructura que se divide en dos componentes principales. Primeramente, el Alcalde y el Presidente de la Asamblea componen la autoridad nominadora de sus respectivas Ramas del gobierno municipal. Art. 11.002, 21 L.P.R.A. § 4552. Segundo, la Junta de Apelaciones del Sistema de Personal (J.A.S.A.P.) se designa como el organismo apelativo del sistema de administración de personal municipal. *Id.; véase además Rivera Ortiz v. Municipio de Guaynabo*, 141 D.P.R. 257 (1996).

Por otro lado, la composición del sistema de personal está integrado por cuatro grupos de empleados: 1) empleados de confianza; 2) empleados de carrera; 3) empleados transitorios; 4) empleados irregulares. Art. 11.004(a)(b)(c) y (d), 21 L.P.R.A. § 4554 (a),(b),(c) y (d).

Por ser la presente controversia una relacionada a quién puede ocupar un puesto de confianza, procedemos a

---

[5] *Véase* Alba Nydia Caballero Fuentes, *El sistema de personal establecido en el capítulo XII de la Ley de Municipios Autónomos*, en Leonardo Santana Rabell y Mario Negrón Portillo, La reforma municipal en Puerto Rico: retos y oportunidades, Río Piedras, Escuela Graduada de Administración Pública, 1993, a la pág. 127.

[6] Específicamente, hemos extendido a los empleados municipales nuestra jurisprudencia sobre violaciones constitucionales a los diferentes tipos de funcionario público. *Véase e.g. Segarra v. Municipio de Peñuelas*, 145 D.P.R. 770 (1998). Esto se debe a que, a pesar de ser excluidos de la Ley de Personal, supra, los municipios están obligados por la Ley de Municipios Autónomos, supra, a establecer un sistema de personal que se rija por el principio del mérito (igual que lo exigido por la Ley de Personal). 21 L.P.R.A. § 4551; *véase además Rodríguez v. Banco Gubernamental de Fomento*, res. el 19 de junio de 2000, 151 D.P.R. ___,2000 T.S.P.R. 93, 2000 J.T.S. 104.

analizar las disposiciones de ley y de jurisprudencia que tratan dicha figura.

    B. Empleados de Confianza: Derechos, deberes y limitaciones

    Según la Ley de Municipios Autónomos, *supra*, el servicio de confianza está constituido por puestos cuyos incumbentes intervienen o colaboran sustancialmente en el proceso de formulación de política pública, asesoran directamente o prestan servicios directos al Alcalde o al Presidente de la Asamblea. Art. 11.003(a), 21 L.P.R.A. § 4553(a). Se dispone también en la referida ley que *serán de confianza los puestos correspondientes a los directores de unidades administrativas* de cada municipio. *Id.; véase además Segarra v. Municipio de Peñuelas*, *supra*, a la pág. 779.

    Estas unidades administrativas, que estarán presente en cada municipio, son las siguientes: a) Oficina del Alcalde; b) Secretaría Municipal; c) Oficina de Finanzas Municipales; d) Departamento de Obras Públicas; e) *Oficina de Administración de Recursos Humanos*; f) Auditoría Interna; g) Agencia Municipal de Defensa Civil. Art. 6.001, 21 L.P.R.A. § 4251. Por tanto, por ser la posición de Director de Recursos Humanos una de confianza, se rige por las disposiciones legales prescritas para dichos funcionarios municipales.

    Sobre este aspecto, hemos expresado anteriormente que en atención a su particular posición dentro de la administración pública, los empleados de confianza serán de *libre selección y remoción*, y deberán reunir aquellos requisitos mínimos de preparación académica[7] y experiencia

_____

[7] Según la Ley de Municipios Autónomos, supra, los candidatos a directores de unidades administrativas de la rama ejecutiva municipal deberán cumplir preferiblemente, pero no

que el Alcalde, en su prerrogativa de realizar nombramientos a dichos puestos, considere indispensables para el adecuado desempeño de sus funciones[8]. *Matías Martí v. Municipio de Lares*, res. el 16 de marzo de 2000, 150 D.P.R.___, 2000 T.S.P.R. 43, 2000 J.T.S. 57.

Por consiguiente, distinto al empleado de carrera, que ocupa su cargo en cumplimiento con el principio del mérito[9]-- teniendo un interés propietario en el desempeño permanente de su cargo-- el empleado de confianza ocupa su posición a la entera discreción de la autoridad nominadora. *Véase Matías Martí v. Municipio de Lares, supra,* a las págs. 1, 2.

Igualmente, la Ley de Municipios Autónomos le confiere al Alcalde la facultad para nombrar de manera interina sustitutos a los directores de las unidades administrativas mencionadas anteriormente. A esos efectos, el Art. 3.009(p) de la referida Ley, 21 L.P.R.A. § 4109(p), dispone que el primer ejecutivo municipal tendrá capacidad para:

> *Nombrar los sustitutos interinos de los funcionarios que sean directores de unidades administrativas en caso de ausencia temporal o transitoria de éstos.* **Las personas designadas**

---

se limitará a, los requisitos mínimos de un bachillerato en la especialidad o área para la cual se le considera. No obstante, en el caso del Director de Recursos Humanos y del Director de Finanzas, deberán cumplir con el requisito mínimo de un bachillerato en la especialidad o en un área relacionada con la posición para la cual se le considera. Art. 6.002, 21 L.P.R.A. § 4252.

[8] La importancia de los requisitos mínimos se debe a que los nombramientos de los directores de las unidades administrativas y otro personal de confianza, como norma general, serán sometidos a la aprobación de la Asamblea Municipal. El único escrutinio que habrá de ejercer la Asamblea es sobre si el personal de confianza sometido a su consideración reúne dichos requisitos mínimos. De ahí que esa confirmación o escrutinio de la Asamblea es generalmente una *pro forma*, pues solo constituye una verificación de tales requisitos. *Véase* Alba N. Caballero Fuentes, *supra*, a la pág. 130.

Por ende, resulta forzoso concluir que bajo la Ley de **Municipios Autónomos,** *la facultad y discreción del Alcalde para realizar los nombramientos de confianza es una sumamente amplia.*

[9] 21 L.P.R.A. § 4554 (b).

> para sustituir interinamente a tales funcionarios podrán ser empleados de la unidad administrativa en que ocurra la ausencia (énfasis suplido).

Sin embargo, a pesar de esta amplia facultad del Alcalde para realizar nombramientos y sustituciones de confianza, hemos resuelto reiteradamente que el derecho a la libre asociación y a no ser discriminado por ideas políticas, consagrados en la Primera Enmienda de la Constitución federal, así como en las secciones 1, 4, 6 y 7 del Art. II de la Constitución de Puerto Rico, también protegen a los empleados que ocupan dichos puestos. *Segarra v. Municipio de Peñuelas*, *supra*, a la pág. 775; *Rodríguez Cruz v. Padilla*, 125 D.P.R. 486 (1990); *McCrillis v. Autoridad de Navieras de P.R.*, 123 D.P.R. 113 (1989). Al tenor de esos pronunciamientos, hemos decidido que los empleados de confianza no pueden ser destituidos por el *único* hecho de militar en un partido distinto al de la autoridad nominadora. *Id.*

Ahora bien, este Tribunal ha adoptado la jurisprudencia del Tribunal Supremo de Estados Unidos en cuanto a que, a pesar de que es cierto que la primera enmienda de la Constitución federal garantiza a todo ciudadano el no ser despedido de su empleo (aunque sea de confianza) por motivo de sus creencias políticas, esto cede si el Estado puede demostrar un interés superior de importancia vital que requiera que las creencias privadas de un empleado público coincidan con las de la autoridad nominadora. *Véase Segarra v. Municipio de Peñuelas*, *supra*, a la pág. 777; *Ramos v. Secretario de Comercio*, 112 D.P.R. 514 (1982) (Estos casos adoptan lo resuelto por el Tribunal Supremo de Estados Unidos en *Branti v. Finkel*, 445 U.S. 507 (1980), y en *Elrod v. Burns*, 427 U.S. 347 (1976)). Esto es así ya que, según expresamos en *Segarra*, *supra*, "la unidad de afiliación

política entre la autoridad nominadora y el empleado de confianza constituye en ocasiones un requisito válido a los fines de garantizar el recto y leal cumplimiento de las responsabilidades del cargo que se ocupa."[10]

A pesar de que los precedentes citados tratan sobre casos de *despido* por razones políticas, el Tribunal Supremo de Estados Unidos resolvió en *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), que al igual que en casos de despido, el *nombrar, reclutar, transferir o reactivar* a un empleo público a una persona bajo la condición de que pertenezca a determinado partido político o que tenga una ideología en particular, ofende las libertades de expresión y asociación garantizadas por la Constitución de Estados Unidos. *Id.,* a la pág. 78. Sin embargo, este caso sostiene la norma de *Elrod* y *Branti*, *supra*, en cuanto permite la imposición de dichas condiciones si ello responde a un interés vital del Estado en preservar la eficacia y el buen funcionamiento del Gobierno. *Id.* Adoptamos lo resuelto en *Rutan*, supra, al decidir el caso de *Aponte Burgos v. Aponte Silva*, res. el 7 de mayo de 2001, 154 D.P.R. ___, 2001 T.S.P.R. 66, 2001 J.T.S. 69, y hoy nos reiteramos en tal acogimiento.

Por tanto, de lo reseñado se puede concluir que nuestro ordenamiento jurídico otorga amplia facultad al Alcalde para realizar sus *nombramientos y sustituciones* a puestos de confianza. A su vez, el empleado de confianza, por no haber llegado a ocupar su cargo mediante el proceso competitivo

---

[10] **En este caso decidimos que el puesto de Director de la Defensa Civil del municipio,** *uno de los siete (7) cargos de*
contunúa...

[10] ...continuación
*unidades administrativas que la Ley de Municipios Autónomos expresamente crea*, **era uno que requiere de armonía política entre la autoridad nominadora y el empleado de confianza.**

que supone el principio del mérito, no se le reconoce un interés propietario en su puesto, por lo que lo desempeña a la entera discreción de la autoridad nominadora. No obstante, el reclutar, transferir, reactivar o despedir a un empleado tomando como base para ello únicamente su afiliación o ideología política, es inconstitucional, a menos que hacerlo adelante un interés vital del Estado en fomentar una mejor administración pública.

A la luz de este estado de derecho, pasemos a resolver la controversia en sus méritos.

### III

En el caso ante nuestra consideración, el Municipio entiende que incidió el TCA al resolver que el Alcalde carecía de facultad en ley para nombrar interinamente a una persona como Director de Recursos Humanos, ya que venía obligado a nombrar a la señora López Hernández. Para determinar la procedencia de esta alegación, analicemos las circunstancias particulares del caso.

Según los hechos relacionados en los alegatos, la demandante-recurrida ocupa el puesto de Sub-Directora de Recursos Humanos del Municipio de Mayagüez, cargo correspondiente al servicio de carrera.

Por otro lado, según lo expuesto en los párrafos precedentes y lo decidido por el TCA en el caso de autos, *el puesto de Director de Recursos Humanos es uno de confianza.*

La demandante-recurrida alega que la negativa a nombrarla al puesto de Director de Recursos Humanos cuando el funcionario que ocupa dicho puesto se ausenta temporeramente viola sus derechos constitucionales en abierto desacato a la Sentencia Parcial dictada del 21 de marzo de 1995. No le asiste la razón. Veamos.

La referida Sentencia Parcial expresa en su parte dispositiva que:

> Se ordena a la parte demandada el que inmediatamente reintegre a la demandante a su puesto de carrera de Sub-Directora de la Oficina de Personal, se le restituya todos los deberes y responsabilidades inherentes a este puesto y se le permita ejercer y llevar a cabo los mismos; que se ubique su oficina donde está localizada la Oficina de Personal (Recursos Humanos) del Municipio de Mayagüez y se le conceden todos los beneficios o privilegios que le correspondan al incumbente de este puesto como si ella lo hubiera estado ocupando; y, se le conceda la clasificación y escala salarial que le corresponda a este puesto conforme al Plan de Clasificación y Retribución que se estaba llevando a cabo y además se le conceda cualquier otra acción de personal o legislativa que se haya adoptado y le sea favorable.[11]

Luego de un análisis detallado de la citada orden del TPI en la referida Sentencia Parcial, se desprende que la negativa del Alcalde de Mayagüez en nombrar interinamente a la demandante-peticionaria al puesto de Director de Recursos Humanos no viola dicho mandato. Esto es así ya que, al bosquejar los diferentes mandamientos enunciados en tal orden, observamos que se limita a lo siguiente:

1) Que se reintegre a la demandante-recurrida a su *puesto de carrera*;

2) Se restituyan todos sus deberes y *responsabilidades inherentes a su puesto*;

3) Se ubique su oficina en la Oficina de Personal del Municipio;

4) Se le concedan todos los beneficios o privilegios que le corresponden al incumbente de dicho puesto;

5) Se le conceda la clasificación y escala salarial que le corresponda a este puesto;

6) Se le conceda cualquier otra acción de personal o legislativa que se haya adoptado y le sean favorables.

Como se puede observar, *ningún elemento de la orden del TPI en su Sentencia Parcial requiere al señor Alcalde*

---

[11] **López Hernández v. Municipio de Mayagüez**, res. el 21 de marzo de 1995, Civil Núm. I-PE-93-0163 (202 A), a la pág. 32.

nombrar a la demandante-recurrida a la posición de Director de Recursos Humanos.[12] **De hecho, el establecer un mandato de esa naturaleza sería contrario a la Ley de Municipios Autónomos,** *supra*, **que establece que el puesto de Director de Recursos Humanos, por ser de confianza,** *es de libre selección y remoción.* **Art. 6.004, 21 L.P.R.A. § 4554 (a) (énfasis suplido);** *véase además Matías Martí v. Municipio de Lares, supra.* **Además, dicha Ley expresamente provee para el nombramiento de "sustitutos interinos de los funcionarios que sean directores de unidades administrativas en caso de ausencia temporal o transitoria de éstos." Art. 3.009(p), 21 L.P.R.A. § 4109(p). Por ello, aunque las regulaciones internas del Municipio, según enunciadas en la** *Certificación* **de 14 de diciembre de 1988,[13] incluyen entre las responsabilidades inherentes al cargo de Sub-Director de Recursos Humanos el asumir las responsabilidades del Director cuando éste se ausente, estas disposiciones reglamentarias internas no limitan de ningún modo la facultad conferida al Alcalde por la Ley de Municipios Autónomos,** *supra*, **para nombrar personal de confianza, ya sea en propiedad o interinamente. Así pues, aunque el Sub-Director** *podría* **asumir las responsabilidades del Director cuando éste se ausente, dicha eventualidad queda supeditada a que el Alcalde ejercite su facultad para nombrar a otra persona como sustituto del director de la unidad administrativa concernida, según la autoridad que le confiere el Art. 3.009(p) de la Ley de Municipios Autónomos,** *supra*.

_____

**[12] Además, de las alegaciones no surge que el Municipio haya violentado algún otro de los mandamientos emitidos en la orden de la referida Sentencia Parcial, como por ejemplo, remover a la Sra. López Hernández de su puesto de carrera.**
**[13] Véase escolio 3,** *supra*.

Finalmente, según expusimos anteriormente, al nombrar a su personal de confianza, el Alcalde solamente tiene que verificar que los nominados reúnan aquellos requisitos mínimos de preparación académica y experiencia que, *en su prerrogativa de realizar nombramientos a dichos puestos*, considere indispensables para el adecuado desempeño de sus funciones.   Como único límite a tal facultad, el Alcalde tiene que observar que al ejercer su amplia prerrogativa, éste no puede imponer condiciones inconstitucionales a un empleado de modo que éste pueda obtener, mantener o mejorar su puesto público.

Por ende, siendo únicamente estas las restricciones que la ley y la jurisprudencia le imponen a la facultad nominadora del Alcalde[14], no podemos interpretar los estatutos en controversia de tal modo que un primer ejecutivo municipal venga obligado a reclutar a una persona específica a un puesto de confianza.   Si así resolviéramos, tornaríamos en inoperantes las posiciones de confianza, toda vez que el proceso de reclutamiento para dichos cargos estaría regido por consideraciones ajenas a la confianza y afinidad ideológica que exista entre la parte nominadora y el empleado reclutado.   Es decir, de venir el Municipio

---

[14] La Ley de Municipios Autónomos, *supra*, limita también el número de posiciones de confianza que estarán a disposición del Alcalde.  De este modo, la Ley dispone que:

continúa...

[14] ...continuación

[e]l Alcalde establecerá por orden ejecutiva un plan de puestos de confianza que contenga un máximo de veinticinco (25) puestos de confianza con que interese funcionar.  Cuando la estructura organizativa, complejidad funcional o tamaño del municipio requiera un número mayor de puestos de confianza, será necesaria la aprobación de una ordenanza autorizando incluir un número mayor de veinticinco (25) puestos en el plan de puestos de confianza del municipio, cuyo número total no podrá exceder en ningún caso de cincuenta (50) puestos.  Art. 12.003(a), 21 L.P.R.A § 4553 (a).

*obligado* **a nominar a la demandante-recurrida a la plaza en controversia, ello equivaldría a conferirle un interés propietario sobre dicho puesto, convirtiéndose la posición, para todos los fines prácticos, en una de carrera.**

**En consecuencia, la pretensión de la demandante-recurrida en cuanto a que ella tiene derecho a ocupar un puesto de confianza, es inaceptable:** *No existe un derecho constitucional a ocupar un puesto de confianza.* **Esto es así independientemente de que el nombramiento sea uno en propiedad o, como en este caso, interinamente ante la ausencia temporera del funcionario en propiedad. El fundamento para ello es que la labor del funcionario de confianza siempre será la de formulación de política pública, asesorar directamente o prestar servicios directos al Alcalde o al Presidente de la Asamblea, 21 L.P.R.A. § 4553(a). Para muchas de las responsabilidades que estas labores enmarcan se requiere de la afinidad ideológica entre la autoridad nominadora y el empleado público, toda vez que su orientación es eminentemente política, para cumplir un programa o mandato endosado en las urnas electorales. Mientras que, para el proceso técnico de instrumentar tal política pública, no se requiere inexorablemente de tal afinidad.** *Véase* **Francisco Aponte Pérez,** *La Ley de Personal de Puerto Rico y el Servicio de Confianza y de Carrera*, **41 Rev. Col. de Abog. 99 (1980).**

**Por tanto, atendiendo estas circunstancias y basándonos en nuestra decisión en** *Segarra*, *supra*, **resolvemos que para el puesto de Director de Recursos Humanos, la afinidad ideológica entre la autoridad nominadora y el funcionario concernido es un elemento inherentemente necesario para el desempeño adecuado del cargo. Como en** *Segarra*, *supra*, **llegamos a tal conclusión luego de analizar la naturaleza de**

las funciones y deberes del puesto, según estatuidos en el artículo 6.003 de la Ley de Municipios Autónomos, 21 L.P.R.A. 4253, y de atender otros requisitos inherentes a su nombramiento. *Véase Segarra*, supra, a las págs 778-784.[15]

Así pues, el Alcalde tiene la autoridad para nombrar interinamente al puesto de Director de Recursos Humanos a una persona de su confianza y copartícipe de su visión política. Esta autoridad le permite al Alcalde discriminar por razones políticas al realizar dichos nombramientos, ello sujeto a que se encuentren las condiciones enunciadas en *Elrod*, *Branti* y *Rutan*, así como en nuestra jurisprudencia que los adopta.[16] Esto es, como ocurre en este caso, que las responsabilidades del puesto requieran de la sintonía ideológica como elemento inherentemente necesario para el mejor funcionamiento de la cosa pública.

IV

No estando obligado el Alcalde a nombrar a la demandante-recurrida al puesto de confianza en controversia, éste no violó el mandamiento emitido mediante la Sentencia Parcial de 21 de marzo de 1995. Siendo la referida plaza una que requiere de la armonía ideológica entre la autoridad

---

[15] Explicamos en *Segarra*, *inter alia*, que la Ley de Municipios Autónomos, 21 L.P.R.A. § 4252(b), obliga al Alcalde reelecto a resometer ante la Asamblea Municipal el

continúa...

[15] ...continuación
nombramiento de aquellos directores de unidades administrativas municipales que desee conservar en un segundo cuatrienio. Esto lo interpretamos como un reconocimiento de parte del legislador de que, debido a la naturaleza de las funciones desempeñadas por los directores de unidades administrativas, la autoridad para hacer dichos nombramientos recae en el Alcalde que asume el puesto por vez primera o del que resulta reelecto. Ello debido a que la sintonía ideológica entre el Alcalde y este tipo de funcionario es vital para la más adecuada administración pública municipal.

[16] Dada esta circunstancia, en nada cambiaría la conclusión alcanzada hoy el evaluar la corrección del dictamen del TCA, en cuanto halló discrimen político en el proceder del Municipio, como nos solicita este último en su segundo señalamiento de error.

nominadora y el funcionario concernido, el Alcalde tiene amplia libertad para seleccionar a la persona que mejor adelante su proyecto administrativo refrendado electoralmente. Por tanto, en el caso de marras no cabe hablar de discrimen ilegal ni de condiciones inconstitucionales.

Así pues, incidió el TCA al encontrar a los demandados-peticionarios incursos en desacato al no nombrar interinamente a la demandante-recurrida al puesto de Director de Recursos Humanos, unidad administrativa bajo el servicio de confianza del Municipio de Mayagüez.

Por todo lo anterior, se confirma el dictamen del TCA en cuanto resuelve que el puesto de Director de Recursos Humanos es uno de confianza. Se revoca en cuanto a los restantes aspectos.

Se dictará sentencia de conformidad.


                              BALTASAR CORRADA DEL RIO
                              JUEZ ASOCIADO

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**


**Olga López Hernández**

 **Demandante-Recurrida**

**v.**

**Municipio de Mayagüez, et als          CC-2002-239**

 **Demandado-Peticionario**


**SENTENCIA**


San Juan, Puerto Rico, a 12 de febrero de 2003.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma el dictamen del Tribunal de Circuito de Apelaciones en cuanto resuelve que el puesto de Director de Recursos Humanos es uno de confianza. Se revoca en cuanto a los restantes aspectos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.


                         Patricia Otón Olivieri
                    Secretaria del Tribunal Supremo